UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------------X

ROSA FIERRO,

Plaintiff,

-v-

NEW YORK CITY DEPARTMENT OF EDUCATION
and MARGARITA COLON, *individually and in her
official capacity as Principal*,

Defendants.

------------------------------------------------------------------------X

13 Civ. 3637 (PAE)

<u>OPINION & ORDER</u>

PAUL A. ENGELMAYER, District Judge:

Plaintiff Rosa Fierro ("Fierro"), a former employee of the New York City Department of Education ("DOE"), brings this action pursuant to 42 U.S.C. § 1983 against the DOE and Margarita Colon ("Colon"), the principal of the school at which Fierro once worked as a teacher (collectively, "defendants"). Fierro alleges that defendants failed to reasonably accommodate her disability, discriminated against her on the basis of her disability, subjected her to a hostile work environment, and constructively discharged her, in violation of the Equal Protection Clause of the Fourteenth Amendment. Defendants now move to dismiss the Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons that follow, the motion is granted.

I.      **Background**[1]

    A.      **Facts of the Case**

In 1993, Fierro began working for the DOE as a substitute teacher. Am. Compl. ¶ 11. In 2002, she began working as a certified teacher at PS 72X in the Bronx. *Id.* ¶ 12.

In 2005, Fierro began suffering from an "orthopedic disability" in her knees, arms, shoulders, and back, which limited her ability to, *inter alia*, walk up stairs, carry heavy objects, and sit or stand for periods of time. *Id.* ¶ 8. In 2006, following an on-the-job injury, Fierro underwent surgery on her knee. *Id.*

In February 2007, Colon became principal of PS 72X. *Id.* ¶ 13. Fierro alleges that, upon becoming principal, Colon "began discriminating, harassing, and intimidating" her "on almost a daily basis." *Id.* ¶ 15. Colon (1) "falsely accused [Fierro] of corporal punishment in February 2008"; (2) again "falsely accused [her] of corporal punishment and removed her from the classroom" in May 2008; (3) "rated [her] unsatisfactory . . . as a result of time missed from work due to [her] medical condition"; (4) conducted "unwarranted disciplinary meetings relating to [Fierro's] alleged poor performance and alleged incompetency," and held these meetings on the second floor of the building, which was not readily accessible to Fierro; (5) "ordered [her] to attend a mandatory psychiatric examination" in October 2008; (6) "denied Line of Duty Injury status ('LODI') to an injury [she] suffered in her classroom during school hours"; (7) denied her Family Medical Leave Act and LODI status following an automobile accident in January 2009; (8) terminated her employment on March 26, 2009, following a long-term absence, on the

---

[1] The facts that form the basis of this Opinion are drawn from the Amended Complaint, Dkt. 12 ("Am. Compl."). On a motion to dismiss, the Court accepts all factual allegations in the Amended Complaint as true. *See Leonard F. v. Israel Discount Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999).

ground that she abandoned her position;[2] (9) after her position was reinstated, "refused to accommodate [her] disability by giving her a first floor classroom assignment"; and (10) "failed and refused to provide [her] with support and assistance, causing [her] to be subjected to physical abuse by the children without fear of discipline on almost a daily basis." *Id.*

On or about May 30, 2010, Fierro gave notice that she intended to retire and filed for disability retirement benefits. *Id.* ¶ 18.

**B.    Procedural History**

On May 30, 2013, Fierro filed the Complaint in this action. Dkt. 1. It alleged that defendants failed to reasonably accommodate her disability, discriminated against her on the basis of her disability, subjected her to a hostile work environment, and constructively discharged her, in violation of 42 U.S.C. §§ 1983 & 1986. On September 13, 2013, defendants filed a motion to dismiss pursuant to Rule 12(b)(6), Dkt. 9, and a supporting memorandum of law, Dkt. 10 ("Def. Br."). Defendants argued, *inter alia*, that (1) the claims in the Complaint are mostly, if not entirely, time-barred; (2) the challenged actions were not pursuant to a municipal policy or custom, and thus cannot form the basis for a *Monell* claim; (3) disability-based discrimination claims are not cognizable under § 1983; and (4) the Complaint fails to state a § 1986 claim.

On October 18, 2013, Fierro filed the Amended Complaint. Dkt. 12. The Amended Complaint no longer pled a § 1986 claim, but left the § 1983 claim substantially intact. On November 18, 2013, defendants submitted a letter renewing their motion to dismiss, and stating

---

[2] Colon and the DOE subsequently agreed to allow Fierro to return to work after she was cleared by the DOE Medical Department. *See* Am. Compl. ¶ 13(i).

that they would rely on their previously submitted-motion papers.[3]  *See* Dkt. 13, 14.  On January

21, 2014, Fierro submitted a memorandum of law in opposition to that motion.  Dkt. 18 ("Pl.

Br.").  Defendants did not submit a timely reply.

## II.   Applicable Legal Standards

To survive a motion to dismiss under Rule 12(b)(6), a complaint must plead "enough

facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S.

544, 570 (2007).  A claim will only have "facial plausibility when the plaintiff pleads factual

content that allows the court to draw the reasonable inference that the defendant is liable for the

misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009).  A complaint is properly

dismissed, where, as a matter of law, "the allegations in a complaint, however true, could not

raise a claim of entitlement to relief."  *Twombly*, 550 U.S. at 558.

In considering a motion to dismiss, a district court "must accept as true all well-pleaded

factual allegations in the complaint, and 'draw[ ] all inferences in the plaintiff's favor.'"  *Allaire*

*Corp. v. Okumus*, 433 F.3d 248, 249–50 (2d Cir. 2006); *see also Famous Horse Inc. v. 5th Ave.*

*Photo Inc.*, 624 F.3d 106, 108 (2d Cir. 2010).  However, "the tenet that a court must accept as

true all of the allegations contained in a complaint is inapplicable to legal conclusions."  *Iqbal*,

556 U.S. at 678.  "Threadbare recitals of the elements of a cause of action, supported by mere

conclusory statements, do not suffice."  *Id.*  "[R]ather, the complaint's *factual* allegations must

be enough to raise a right to relief above the speculative level, *i.e.*, enough to make the claim

plausible."  *Arista Records, LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010) (citing *Twombly*,

550 U.S. at 555, 570) (internal quotation marks omitted) (emphasis in *Arista Records*); *accord*

---

[3] Defendants' November 18, 2013 letter also identified several minor ways in which the
Amended Complaint differed from the initial Complaint, including the omission of a § 1986
claim; the letter did not substantively alter the arguments raised in defendants' previously-
submitted memorandum of law in support of dismissal.

*Goldin v. Smith & Nephew, Inc.*, No. 12 Civ. 9217 (JPO), 2013 WL 1759575, at *2 (S.D.N.Y. April 24, 2013).

## III.   Discussion

### A.   Timeliness

In § 1983 actions, the applicable limitations period is the "general or residual state statute of limitations." *Pearl v. City of Long Beach*, 296 F.3d 76, 79 (2d Cir. 2002) (internal quotation marks and alterations omitted).  For a § 1983 claim arising in New York, the statute of limitations is three years. *See Lawson v. Rochester City Sch. Dist.*, 446 F. App'x 327, 328 (2d Cir. 2011); *Washington v. Cnty. of Rockland*, 373 F.3d 310, 317 (2d Cir. 2004).  Federal law, however, determines when a § 1983 cause of action accrues.  *See Pearl*, 296 F.3d at 80. "[A]ccrual occurs 'when the plaintiff knows or has reason to know of the injury which is the basis of his action.'"  *Id.* (quoting *Singleton v. City of New York*, 632 F.2d 185, 191 (2d Cir. 1980)).

Fierro's § 1983 claims arise out of several allegedly discriminatory events that took place between 2007, when Colon became principal of PS 72X, and May 30, 2010, when Fierro alleges that she was constructively discharged.  The Complaint was not filed until May 30, 2013, exactly three years after Fierro's alleged constructive discharge.  The issue, then, is which of her § 1983 claims could still timely be brought as of May 30, 2013.

Fierro's constructive discharge claim is timely, because it accrued on May 30, 2010—the last day of the three-year limitations period.[4]  *See Flaherty v. Metromail Corp.*, 235 F.3d 133, 138 (2d Cir. 2000) (a constructive discharge claim accrues on "the date when [the employee]

_____

[4] On a motion to dismiss, the Court accepts as true the allegation in the Amended Complaint that Fierro gave notice of her intent to retire on May 30, 2010.

gave definite notice of her intention to retire").  Her other allegations—of failure to accommodate, discrimination, and hostile work environment—however, are all based on events that occurred before May 30, 2010, *i.e.*, outside the three-year statute of limitations period, and thus appear clearly time-barred.

Countering this, Fierro argues that the continuing violation doctrine rescues these claims. Pl. Br. 4−5.  "The 'continuing violation doctrine' is an 'exception to the normal knew-or-should-have-known accrual date' if there is 'evidence of an ongoing discriminatory policy or practice.'" *Corona Realty Holding, LLC v. Town of N. Hempstead*, 382 F. App'x 70, 72 (2d Cir. 2010) (quoting *Harris v. City of New York*, 186 F.3d 243, 248 (2d Cir. 1999)).  "[A] continuing violation may be found where there is proof of specific ongoing discriminatory policies or practices, or where specific and related instances of discrimination are permitted by the employer to continue unremedied for so long as to amount to a discriminatory policy or practice." *Cornwell v. Robinson*, 23 F.3d 694, 704 (2d Cir. 1994).  Where such a continuing violation is shown, "the plaintiff is entitled to bring suit challenging all conduct that was a part of that violation, even conduct that occurred outside the limitations period."  *Id.* at 704; *see also Harris*, 186 F.3d at 248 ("[T]he existence of such a continuing discriminatory practice or policy may delay the commencement of the statute of limitations period 'until the last discriminatory act in furtherance of it.'") (quoting *Gomes v. Avco Corp.*, 964 F.2d 1330, 1333 (2d Cir. 1992)).

"Discrete incidents of discrimination that are not part of a discriminatory policy or practice, however, cannot be continuing violations." *Corona Realty Holding*, 382 F. App'x at 72.  In *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101 (2002), the Supreme Court distinguished, for the purposes of the continuing-violation doctrine, "discrete acts," *i.e.* discriminatory acts that occur at a particular time, *id.* at 113−15, from "continuing violations,"

6

*i.e.* a pattern of discriminatory acts extended over time pursuant to a discriminatory policy that, taken together, constitute a single unlawful employment practice, *id.* at 115−18.  *See Sareen v. Port Auth. of N.Y. & N.J.*, No. 12 Civ. 2823 (PAE), 2013 WL 6588435, at *7 (S.D.N.Y. Dec. 16, 2013); *Port Auth. Police Asian Jade Soc'y of N.Y. & N.J. v. Port Auth. of N.Y. & N.J.*, 681 F. Supp. 2d 456, 463 (S.D.N.Y. 2010).  The Court in *Morgan* explained that, unlike continuing violations, "discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges.  Each discrete discriminatory act starts a new clock for filing charges alleging that act."  536 U.S. at 113.

Fierro claims that defendants' actions before May 30, 2010 constitute a pattern of discrimination on the basis of disability that resulted in a hostile work environment, and eventually culminated in her constructive discharge.  Pl. Br. 5.  Because "the last act"—the alleged constructive discharge—"occurred within three years of the filing of [the] complaint," Fierro argues, "the Court has jurisdiction over [her] entire hostile work environment claim."  *Id.*

The Amended Complaint, however, fails to plausibly allege a pattern of discriminatory conduct on defendants' part.  Defendants' challenged actions—*i.e.*, falsely accusing Fierro of poor performance; subjecting Fierro to unwarranted disciplinary hearings and psychiatric evaluations; failing to accommodate Fierro's disability; denying Fierro LODI status; and wrongfully terminating Fierro's employment after a long-term absence, *see* Am. Compl. ¶ 15— are merely several discrete acts, each of which "start[ed] a new clock for filing charges alleging that act," *Morgan*, 536 U.S. at 113; *see, e.g.*, *Washington*, 373 F.3d at 318 ("decision to file disciplinary charges against plaintiffs . . . is clearly a single act, discrete in its nature," and a "series of separate acts [cannot] be characterized as an ongoing policy . . . sufficient to toll the applicable statute of limitations"); *Elmenayer v. ABF Freight Sys., Inc.*, 318 F.3d 130, 135 (2d

Cir. 2003) (employer's failure to accommodate employee's religious practices does not give rise to a continuing violation).   The alleged instances of discrimination are simply not sufficiently "specific and related . . . to amount to a discriminatory policy or practice."  *Cornwell*, 23 F.3d at 704; *accord Yaba v. Roosevelt*, 961 F. Supp. 611, 619−20 (S.D.N.Y. 1997).

Thus, Fierro's claims based on defendants' failure to accommodate her disability, discrimination against her on the basis of disability, and creation of a hostile work environment are time-barred.  Although Fierro alleges that the hostile work environment created by defendants before May 30, 2010 led to her constructive discharge, that allegation is insufficient to resuscitate her time-barred claims.  *Cf. Tucker v. MTA, et al.*, No. 11 Civ. 5781 (JPO), 2013 WL 55831, at *3 n.5 (S.D.N.Y. Jan. 4, 2013) (continuing violation doctrine applies "when there is a continuous chain of discriminatory *acts, not* when the *injury* from the discriminatory acts continues past the [end of the limitations period]" (internal quotation marks omitted) (emphasis in *Tucker*)).  Fierro's only timely claim is, therefore, for constructive discharge.[5]

### B.        Failure to State a Claim for Municipal Liability

Local governing bodies, such as the DOE, may be sued directly under § 1983 only where "a violation of rights resulted from the 'government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy.'" *Nagle v. Marron*, 663 F.3d 100, 116 (2d Cir. 2011) (quoting *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 694 (1978)).  In this Circuit, to establish *Monell* liability, a plaintiff must show, in addition to a violation of his constitutional rights, "(1) the existence of a municipal policy or custom . . . that caused his injuries beyond merely employing the misbehaving officer[s]; and (2)

---

[5] To the extent that the Amended Complaint alleges constructive discharge caused by a hostile work environment, the Court, in considering the motion to dismiss, will consider the factual allegations bearing on hostile work environment prior to May 30, 2010.  However, Fierro cannot timely state an independent hostile work environment claim based on those events.

a causal connection—an 'affirmative link'—between the policy and the deprivation of his constitutional rights." *Harper v. City of New York*, 424 F. App'x 36, 38 (2d Cir. 2011) (citing *Vippolis v. Vill. of Haverstraw*, 768 F.2d 40, 44 (2d Cir. 1985)) (internal quotation marks omitted). "Similarly, there must be proof of such a custom or policy in order to permit recovery on claims against individual municipal employees in their official capacities, since such claims are tantamount to claims against the municipality itself." *Dwares v. City of New York*, 985 F.2d 94, 100 (2d Cir. 1993).

Fierro alleges that Colon, in her capacity as principal of PS 72X, was a municipal policymaker, and that her actions constitute official action sufficient to substantiate a *Monell* claim. Am. Compl. ¶ 7. The Amended Complaint also alleges that, even if Colon is not a municipal policymaker, the DOE is liable for inadequate supervision or training. *See id.* ¶¶ 22–24. The Court will address each basis for asserting municipal liability in turn.

"[T]he single act of a municipal policymaker, *i.e.,* a person with the authority to set municipal policy, can constitute official policy, and thus, can give rise to municipal liability." *Santos v. New York City*, 847 F. Supp. 2d 573, 576 (S.D.N.Y. 2012) (citing *Pembaur v. Cincinnati*, 475 U.S. 469, 480 (1986)). Authority to set municipal policy resides in "the official or officials responsible for establishing final policy with respect to the subject matter in question." *Pembaur,* 475 U.S. at 482–83 (citation omitted); *see also Hurdle v. Bd. of Educ. of City of New York*, 113 F. App'x 423, 425 (2d Cir. 2004) (question is "whether the governmental official is a final policymaker for the local government . . . on the particular issue involved in the action" (internal quotation marks and alterations omitted)). "'[I]dentification of policymaking officials is a question of state law.'" *Dressler v. New York City Dep't of Educ.*, No. 10 Civ. 3760 (JPO), 2012 WL 1038600, at * 17 (S.D.N.Y Mar. 29, 2012) (quoting *St. Louis v. Praprotnik*, 485

U.S. 112, 123 (1988)).  Thus, whether Colon is a municipal policymaker turns on whether, under

New York law, she had final decisional authority on the challenged employment action.

Courts in this Circuit have "disagreed on whether a principal is a final policymaker" for

purposes of a *Monell* claim, *Dressler*, 2012 WL 1038600, at *18 (collecting cases), and have

found that "a public school principal acts as a final policymaker to the extent that the ultimate

harm that befell the plaintiff was under the principal's control," *Zambrano–Lamhaouhi v. New

York City Bd. of Educ.*, 866 F. Supp. 2d 147, 175 (E.D.N.Y. 2011) (collecting cases).  However,

with respect to termination of teachers' employment, principals do not have final decisional

authority; their decisions are subject to appeal to the Chancellor and the DOE.  *See Zambrano–

Lamhaouhi*, 866 F. Supp. 2d at 175; *see also Moore v. City of New York*, No. 08 Civ. 8879

(PGG), 2010 WL 742981, at *6 (S.D.N.Y. Mar. 1, 2010); *accord Dressler*, 2012 WL 1038600,

at *18.  Thus, Colon is not a municipal policymaker with respect to the conduct challenged in

Fierro's only timely claim (constructive discharge).  *See Hurdle*, 113 F. App'x at 426 ("where

Board of Education and Chancellor 'retained the authority to overrule [an official] on appeal'

concerning his decision to fire employees, [that official] did not have final policymaking

authority" (quoting *Hill v. N.Y. City Bd. of Educ.*, 808 F. Supp. 141, 151 (E.D.N.Y. 1992))).

Because Colon is not a municipal policymaker, to state a *Monell* claim, the Amended

Complaint would have to allege that the DOE's "failure to [investigate or to] train, or the policies

or customs that it has sanctioned, led to an independent constitutional violation."  *Segal v. City of

New York*, 459 F.3d 207, 219 (2d Cir. 2006).  The Amended Complaint makes the conclusory

allegation that "DOE supervisors . . . failed to properly investigate and address allegations of

unequal treatment, creation of a hostile work environment, discrimination, retaliation, and/or

harassment," Am. Compl. ¶ 24(c); and that "[i]nadequate training/supervision at the DOE was so

likely to result in the unequal treatment, creation of a hostile work environment, discrimination, retaliation, and/or harassment that policymakers can reasonably be said to have been deliberately indifferent to the need to provide better training and supervision," *id.* ¶ 24(d).  But the Amended Complaint lacks factual allegations plausibly indicating that the DOE's failure to train or supervise led to the purported equal protection violation (*i.e.*, Fierro's constructive discharge).[6]

The allegations of a broader municipal policy or custom on the part of the DOE are equally conclusory.  *See id.* ¶ 22 ("Policymakers, while acting under color of state law, deprived Plaintiff of her right to equal protection . . . by treating [her] differently than others similarly situated . . . ."); *id.* ¶ 24(a) ("It was the DOE's official custom or practice to discriminate or retaliate against disabled employees."); *id.* ¶ 24(b) ("The discriminatory practices were so persistent and widespread that even if they were not the official custom or practice of the DOE, they constitute the constructive acquiescence of the policymakers.").  Thus, Fierro's claims against the DOE and against Colon in her official capacity must be dismissed.  *See Perez v. Cnty. of Westchester*, 83 F. Supp. 2d 435, 438 (S.D.N.Y. 2000) (granting motion to dismiss because "[t]he complaint does not include any facts demonstrating the existence of a policy or custom").

### C.    Failure to State a Section 1983 Claim

As discussed above, Fierro's failure to accommodate, discrimination, and hostile work environment claims must be dismissed as untimely, and her constructive discharge claim against the DOE and against Colon in her official capacity must be dismissed for failure to state a claim for municipal liability.  Defendants argue that Fierro's § 1983 claims are also deficient for an independent reason—disability-based discrimination claims are not cognizable under § 1983.

---

[6] Fierro's *Monell* claim independently fails because the Amended Complaint fails to state a § 1983 claim for the underlying rights violation.  *See infra*, Part III.C.

"A § 1983 claim has two essential elements: (1) the defendant acted under color of state law; and (2) as a result of the defendant's actions, the plaintiff suffered a denial of her federal statutory rights, or her constitutional rights or privileges." *Annis v. Cnty. of Westchester*, 136 F.3d 239, 245 (2d Cir. 1998).

The Amended Complaint alleges that defendants discriminated against Fierro on the basis of her disability, creating a hostile work environment that led to her constructive discharge. This conduct, she alleges, violated her rights under the Equal Protection Clause. However, freedom from discrimination on the basis of disability is a right secured by statute, *see* 42 U.S.C. § 12131 *et seq.* (the "Americans with Disabilities Act" or "ADA"); *id.* § 12132 (prohibiting discrimination against any "qualified individual with a disability. . . by reason of such disability"), not by the Constitution, *see Bd. of Trustees of Univ. of Ala. v. Garrett*, 531 U.S. 356, 368 (2001) ("If special accommodations for the disabled are to be required, they have to come from positive law and not through the Equal Protection Clause."); *accord O'Leary v. Town of Huntington*, No. 11 Civ. 3754 (JFB), 2012 WL 3842567, at *14 (E.D.N.Y. Sept. 5, 2012). And the law in this Circuit is clear that "[a] § 1983 action may not . . . be brought to vindicate rights conferred only by a statute that contains its own structure for private enforcement." *Patterson v. Cnty. of Oneida*, 375 F.3d 206, 225 (2d Cir. 2004). Thus, Fierro's claim that she was constructively discharged on the basis of her disability is not actionable under § 1983.[7] *See EC ex rel. RC v. Cnty. of Suffolk*, 882 F. Supp. 2d 323, 355 (E.D.N.Y. 2012) ("ADA has its own right of enforcement and, consequently, an ADA action may not be brought pursuant to 42

---

[7] The Court notes that, even if Fierro's failure to accommodate, discrimination, and hostile work environment claims were not time-barred, they would not be cognizable under the Equal Protection Clause for the same reasons that her constructive discharge claim is not cognizable. *See, e.g.*, *O'Leary*, 2012 WL 3842567, at *14 ("Failure to provide a reasonable accommodation [to the disabled] cannot form the basis of an Equal Protection claim.").

U.S.C. § 1983."); *Brown v. Research Foundation of SUNY*, No. 08 Civ. 592 (TJM), 2009 WL 1504745, at *10 (N.D.N.Y. May 28, 2009) ("Because Title VII, the ADA, and the ADEA contain their own structure for private enforcement, Plaintiff may not bring a § 1983 claim premised upon the substantive rights provided by these statutes."); *Pape v. Bd. of Educ. of the Wappingers Cent. Sch. Dist., et al.*, No. 07 Civ. 8828 (KMK), 2009 WL 3151200, at *6 (S.D.N.Y. Sept. 29, 2009) (granting motion to dismiss § 1983 claim on ground that "[t]he broad discriminatory claims alleged by Plaintiffs are, at best, the type of alleged discrimination that . . . the ADA [is] designed to protect against, not the Equal Protection Clause" (internal quotation marks omitted)).  This provides an independent basis for dismissing Fierro's § 1983 claims,[8] at least as to the DOE and as to Colon in her official capacity.[9]

   Fierro also claims that Colon treated her differently from other disabled individuals, and thus violated her equal protection rights.  Defendants argue that this claim should be dismissed, including as to Colon in her individual capacity, because the Amended Complaint asserts a "class of one" equal protection claim, and such claims are unavailable in the context of public

---

[8] Because Fierro is represented by counsel, the Court declines to read the Amended Complaint broadly to suggest claims that are not pled within its four corners (*i.e.*, discrimination claims under the ADA), as the Court might be inclined to do for a *pro se* plaintiff.  *See Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009).  Fierro was given the opportunity to amend her original Complaint to cure the deficiencies identified in defendants' motion to dismiss.  *See* Dkt. 11, 12. She failed to adequately do so.

[9] Fierro's § 1983 claims against Colon in her individual capacity "are not automatically dismissable" on the ground that the ADA alone confers the right Fierro now seeks to vindicate (freedom from discriminatory discharge on the basis of disability), because individual liability is available under § 1983, but not under the ADA.  *Patterson*, 375 F.3d at 226 (concluding that plaintiff's "hostile work environment claims against the individual defendants, sued in their individual capacities under §§ 1981 and 1983, are not automatically dismissable" because "Title VII claims are not cognizable against individuals [and] individuals may be held liable under §§ 1981 and 1983 for certain types of discriminatory acts, including those giving rise to a hostile work environment").  The claims against Colon individually are dismissed for the reasons discussed below.

employment.  *See* Def. Br. 6.  Fierro styles her § 1983 claim as a "selective enforcement" equal

protection claim, not a "class of one" claim, *see* Am. Compl. p. 6, but does not affirmatively

disclaim the "class of one" theory in her opposition papers, *see* Pl. Br. 6−7.  In the interests of

completeness, the Court will address each theory.

### 1.    "Class of One" Theory

"The Equal Protection Clause requires that the government treat all similarly situated

people alike."  *Gentile v. Nulty*, 769 F. Supp. 2d 573, 577–78 (S.D.N.Y. 2011).  "Although the

prototypical equal protection claim involves discrimination against people based on their

membership in a vulnerable class, courts have long recognized that the equal protection

guarantee also extends to individuals who allege no specific class membership but are

nonetheless subjected to invidious discrimination at the hands of government officials."[10]

*Sharpe v. City of New York*, 2013 WL 2356063, No. 11 Civ. 5495 (BMC), at *3 n.5 (E.D.N.Y.

May 29, 2013) (internal quotation marks and citations omitted).  "[A] successful equal protection

claim can be brought by a 'class of one,' 'where the plaintiff alleges that she has been

intentionally treated differently from others similarly situated and that there is no rational basis

for the difference in treatment.'"  *Gentile*, 769 F. Supp. 2d at 578 (quoting *Analytical Diagnostic

Labs, Inc. v. Kusel*, 626 F.3d 135, 140 (2d Cir. 2010)); *see also Hayut v. State University of New

York*, 352 F.3d 733, 753−54 (2d Cir. 2003) (a "'class of one' claimant must assert intentional

---

[10] Fierro cannot bring a "prototypical equal protection claim" because disability is not a suspect
classification under the Equal Protection Clause.  *See Pape*, 2009 WL 3151200, at *6
("individuals with disabilities do not qualify as a suspect or quasi-suspect classification calling
for a more exacting standard of judicial review than is normally accorded official actions"
(internal quotation marks omitted)); *O'Leary*, 2012 WL 3842567, at *13 n.10 (collecting cases
and noting that "disability and/or perceived disability are not suspect or quasi-suspect
classifications").

differential treatment that lacks a rational basis in order to state a claim for relief" (citation omitted)); *Giordano v. City of New York*, 274 F.3d 740, 751 (2d Cir. 2001) (same).

However, the Supreme Court and the Second Circuit have made clear that the "class of one" theory does not apply in the public employment context. *See Engquist v. Oregon Dep't of Agriculture*, 553 U.S. 591, 603 (2008) (with respect to public employers, "the rule that people should be 'treated alike, under like circumstances and conditions' is not violated when one person is treated differently from others, because treating like individuals differently is an accepted consequence of the discretion granted [to the public employer]'"); *Appel v. Spiridon*, 531 F.3d 138, 139–40 (2d Cir. 2008) (following *Engquist*, "the Equal Protection Clause does not apply to a public employee asserting a violation of the [Equal Protection] Clause based on a 'class of one' theory of liability"); *see also Ponterio v. Kaye*, 328 F. App'x 671, 672−73 (2d Cir. 2009); *Conyers v. Rossides*, 558 F.3d 137, 152 (2d Cir. 2009).

Even if Fierro could bring a "class of one" claim, however, such a claim would still fail because the Amended Complaint fails to plausibly allege that Fierro was treated differently from any similarly situated individual. "[T]o succeed on a class-of-one claim, a plaintiff must establish that (i) no rational person could regard the circumstances of the plaintiff to differ from those of a comparator to a degree that would justify the differential treatment on the basis of a legitimate government policy; and (ii) the similarity in circumstances and difference in treatment are sufficient to exclude the possibility that the defendants acted on the basis of a mistake." *Ruston v. Town Bd. for Town of Skaneateles*, 610 F.3d 55, 59−60 (2d Cir. 2010) (internal quotation marks omitted). The Amended Complaint identifies "two disabled employees who could not walk, Eleanor George and Richard Soto" and asserts that "Colon granted [them] accommodation by giving them a key to the elevator." Am. Compl. ¶ 21. But the lone detail

regarding the individuals' inability to walk is an insufficient basis from which to infer that these individuals were sufficiently similar to Fierro to state a "class of one" claim.  Thus, Fierro fails to state a "class of one" claim upon which relief can be granted.  *See Pape*, 2009 WL 3151200, at *7 (granting motion to dismiss on "class of one" claim on the ground that "Plaintiffs have not identified any 'similarly situated' person in their Second Amended Complaint who was treated differently from Plaintiffs").

### 2.    Selective Enforcement Theory

To state a claim for selective enforcement, the plaintiff must establish "(1) that [s]he was treated differently from others similarly situated, and (2) that such differential treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person."  *Gentile*, 769 F. Supp. 2d at 578 (internal quotation marks omitted); *cf. United States v. Stewart*, 590 F.3d 93, 121 (2d Cir. 2009), *cert. denied by Sattar v. United States*, 559 U.S. 1031 (2010).

Courts in this Circuit are divided on whether selective enforcement claims are available in the public employment context post-*Engquist*.  *See Gentile*, 769 F. Supp. 2d at 579 & n.9 (collecting cases); *see also Sharpe*, 2013 WL 2356063, at *4 n.6 (noting that "the law in this Circuit is unsettled as to whether public employees' claims asserted under the 'selective enforcement' theory can survive in light of *Engquist*" and that "[t]he Second Circuit has not resolved this confusion").  Even assuming that such a claim is cognizable, the Amended Complaint plainly fails to state a claim for selective enforcement.  As explained above, the Amended Complaint lacks any factual allegations tending to show that Fierro was treated differently from individuals "similarly situated in all material respects."  *Sharpe*, 2013 WL 2356063, at *3; *see id.* at *4 ("Because plaintiff has not alleged that there were other employees

'similarly situated' to him, let alone that defendants treated him differently from such employees, plaintiff has failed to state a 'selective prosecution' equal protection claim."). And the allegation that "Colon['s] conduct was taken in bad faith," Am. Compl. ¶ 21, is mere boilerplate; without more, this bare allegation cannot support a selective enforcement claim. *See Norwood v. Salvatore*, No. 12 Civ. 1025 (MAD), 2014 WL 203306, at *5 (N.D.N.Y. Jan. 17, 2014) ("plaintiff must allege more than mere conclusory allegations to establish malicious or bad faith intent on behalf of a defendant to harm the plaintiff").

Defendants' motion to dismiss Fierro's constructive discharge claim is, therefore, granted.

## CONCLUSION

For the foregoing reasons, the Amended Complaint is dismissed. The Clerk of Court is respectfully directed to terminate the motion pending at Dkt. 9, and to close this case.

SO ORDERED.

*Paul A. Engelmayer*

Paul A. Engelmayer
United States District Judge

Dated: February 4, 2014
New York, New York

17